Pece, J.,
delivered tbe opinion of tbe court:
Moses B. Bramhall claims of tbe United States sixty-four thousand two hundred and sixty dollars, wbicb be alleges is justly due from tbe defendants, and for cause of claim states, “that on and for a long time prior to tbe 1st day of April, A. D. 1865, be claimed to be tbe owner of a large number, to wit, seventy-two bales of cotton, wbicb were stored in various places in tbe city of Savannah; that said seventy-two bales were seized, captured, and taken possession of by, or under direction of, one H. 0. Bansom, an officer of tbe United States army, acting under and by authority of tbe United States. This cotton be alleges was seized on or soon after the capture of Savannah, *55 and was turned over to tlie agents of tlie treasury and sold, and that tlie proceeds were paid over to that department.
Claimant, who states himself to be a citizen of the State of New York, seeks to recover the amount of the proceeds of the cotton .under the act of Congress of 12th March, 1863.
The loyalty of claimant is alleged and proved.
Claimant was examined as a witness, but under the direction of the act of Congress entitled “An act to provide for appeals from the Cotirtof Claims, and for other purposes,” approved June 25,1868, liis testimony cannotbeused. (15 Stat.L,, c.75, § 4.)
The deposition of tlie claimant being out of the record, the principal evidence in support of the demand is to be found in the deposition of Hill Gowdy. On the hearing, claimant rested liis case mainly upon the facts stated by this witness. It becomes our duty, therefore, to examine carefully into his statement.
Hill Gowdy was three times examined as a witness by the claimant, viz: on the 24th of May, on the 24th of September, and on the 9th of October, in the year 1867 — an unusual practice.
The claimant insists that Gowdy was acting as his agent in the purchase of the cotton in question; and Gowdy, nothing loth, is willing to co-operate in creating this belief. In this respect his testimony is somewhat confused and inconsistent. On his first examination Gowdy states circumstantially as follows: “Before the breaking out of the war, and for three years previous thereto, I was irarcliasing cotton at Savannah and shipping it to Liverpool on joint account with him, (claimant,) and drawing upon him for funds to pay for it.” This, if it proves anything, proves a partnership in such transactions, not an agency.
In the same deposition, if not in the same connection, he says: “In the drafts drawn by me on the claimant for the payment of cotton, I failed to place him in possession of the cotton in consequence of the breaking out of the war and blockade, which prevented me from shipping, and therefore I had his money in my hands.” This created the relation of debtor and creditor, which has continued to tlie present time.
Elsewhere Gowdy states another reason for not placing claimant in possession of the cotton, viz: “the general breaking up of all commercial transactions,” and that it was well understood *56 among tlie commercial men of Savannah, where he resided, “that he had suspended on the news of Mr. Lincoln’s election;” in other words, had become insolvent.
On his first examination he says that “before the breaking out of the war, and for three years previous thereto, I was purchasing cotton in Savannah and shipping it to Liverpool on joint account with him, (claimant,) and drawing upon him for funds to pay for it;” this also establishes a partnership rather than an agenejn In the same deposition he says, “ in the drafts drawn by me on the claimant for the payment of cotton I failed to place him in possession of the cotton, in consequence of the breaking out of the war and blockade,” and therefore he had claimant’s money in his hands; a different reason than that previously given, but the relation of debtor and creditor was not changed.
In continuation dowdy says, “ with these funds I purchased cotton in my own name for his (claimant’s) account. I purchased 72 bales of cotton, I thinlc, for his account.” After thus thinking without knowledge, he proceeds to give the names of the venders of 66 bales; and adds, “ all this cotton was purchased on account of the claimant by Ms money, and it was his property.” dowdy says he could not have kept tMs cotton in the southern confederacy as the property of the claimant, because, it would have been sequestered; it had been purchased only four or five days before Savannah was captured; “for that reason I (dowdy) had to keep it in my own name,” acting as his (claimant’s) agent.” “ After I ■ jmrchased this cotton, it was stored in different places in Savannah, deeming that the safest deposit for it, and there it remained until the place was taken by Sherman’s forces.”
If it was not the intention of dowdy to create the impression that the cotton claimed had been purchased by him for the claimant long before the capture of Savannah; he has used a large and useless number of words to express a very brief and simple'fact. In the same deposition dowdy says, “ the cotton had been kept, the most of it, in close werehouses.” Kept by whom? The inference is that dowdy had so kept it for some considerable period of time, inasmuch as he has throughout used such expressions in connection with the cotton as “always kept,” “laid aside,” “been kept,” “stored,” &c., and all about a period of time of one week or less.
*57 On cross-examination Gowdy says tlie 72 bales were reported by bim to Colonel Hansom “ as secretly held by him in his character as agent.” Agent for whom ! and why conceal the name of his principal, especially if that principal was a loyal citizen of the city of New York ? Gowdy had been the agent of others than claimant, and none but himself could say to whom the cotton belonged. Although he and the claimant had transacted business together for three years before the war, yet Gowdy says “ each special case, that is, of business between them, rested upon its own merits,* many of his purchases being on joint account with claimant, and many otherwise;” leaving the fact of agency or partnership in just that convenient state of doubt that Gowdy might or might not be agent, as would best serve the occasion. If the rebellion should become a success, he could be sole or part owner of the cotton; if the rebellion should not succeed, he could then be metamorphosed into an agent, and so avail himself, directly or in directly, of whatever benefits events or policy might devekrp. By keeping himself in this dubious condition, vibrating between the characters of principal and agent, in uncertain relations to this cotton, if Gowdy should not serve himself, he might at least aid his creditors, and so do good by stealth.
In his second deposition Gowdy says he had been acting as agent for the claimant from the 4th of December, 1858, until September, 1807, but that his books of account do not show any entries between them after November 1, I860 — a long hiatus; and thattlieonlytransactionbetween themsinceNovember, 1860, is that of the purchase of these 72 bales of cotton. No correspondence was had between the witness and claimant afterNovember 1, 1801; yet the former says that it was not until April or May afterwards that any necessity existed for concealing any business between them, and strangely states in the same connection, I had no transactions with him (claimant) from October, 1860, till April or May, 1861, except some foreign shipments which were not terminated and do not appear upon the account current.” On cross-examination Gowdy says: “The arrangement for Jceeping the amount of funds belonging to the claimant in cotton, was made by letter about May, 1861.” Whether the funds were to be kept in cotton for foreign shipments or in the 72 bales, is not made clear; we may infer either way; for, notwithstanding the unsettled and unfinished arrangements for *58 “foreign shipments,” Gowdy says that “after the breaking’ out of the rebellion I purchased only these 72 bales of cotton for the claimant.” In another place he says : “ I was buying and selling all the time, and there was no specific appropriation for the claimant’s interest.” Again he says: “The 72 bales were laid aside by me in Savannah for the use of the claimant, I managing to Iceep about that amount always on hand for the claimant’s use.” That is, there were 72 bales in the general for the claimant’s use, but no bales in particular. These incongruous statements are unfortunate for the claimant ■, it is difficult to reconcile them with each other. Gowdy says he purchased the cotton and leept it, under an agreement with claimant, for him, but that he was “chiefly dealing in cotton,” buying and selling, and reinvesting from time to time, so as to make the most of the cotton market \ and attempts to create the impression that he was always and at all times ready and prepared with 72 bales to deliver to the claimant. If this were so, there was no great obj ect in buying and selling ; or there must have been occasions when he was not prepared with cotton to deliver the claimant.
. If the cotton was purchased by witness as an agent for claimant, and with his money, the agent could not sell as he declares he did, without authority, and that he does not pretend he had. He treated the cotton all the while as his individual property. There never was, from first to last, any 72 bales of cotton purchased by Gowdy which the claimant could identify or point to and call his own.
Gowdy at all times asserted his ownership over the cotton, and after the capture of Savannah, when he could have done so with, safety, he never declared or admitted that the cotton belonged to claimant. He did not, when it was seized, call it the property of claimant, but held to it with grasping inconsistency, if it really was not his own.
It is stated by Gowdy that 28 of the 72 bales of cotton were purchased by him of F. G. Dana; yet Dana, at the time of the seizure and removal of the cotton by the agent of the United States, claims this cotton as his own, and there is no proof that Gowdy, who says he saw the Hnited States officer take the cotton from the various places where it was stored, disputed the claim as set up by Dana. The witness who makes this proof is produced by the claimant. Gowdy asserts that he was constantly buying and selling cotton, even selling the 72 bales *59 which be says be always kept on band witlx wbieb to pay tbe claimant. He does not pretend that tbe gain be made by this buying and selling with tbe money be owed claimant went elsewhere than into bis own pocket. A purchaser as agent cannot sell for bis own profit ; were be to do so it would present too strong a temptation to men of flexible morals to do wrong, and such dealing is prohibited. It was long since promulgated that no man can serve two masters. Tbe difficulty of tbe task is not diminished if himself is one of those masters.
Gowdy could not be tbe agent of claimant diming tbe rebellion ; tbe relation of principal and agent could not exist. Tbe doctrine of subsequent ratification has no application to tbe facts of this case. If that principle could be made applicable, indiscriminately, to cases under this statute, it might be wholly circumvented. Imaginary agencies would be numberless.
It may be that tbe transactions of a debtor or agent within rebel territory, on behalf of a person outside of that territory, maybe so conducted with an honest purpose, that when ratified with a like purpose, this court would uphold them.
It is insisted that tbe present case is like that of Mayer, reported in 3 C. Cls. R., p. 219, and that it ought to be decided in tbe same way.
It may be that some of tbe facts, as assumed to exist in this case, are like those that really existed in tbe case of Mayer; but there is this important difference in tbe two cases, which may serve to explain why tbe judgments should be different:
In the case of Mayer tbe court was satisfied from tbe evidence that Mayer was tbe owner of tbe cotton, tbe proceeds of which be claimed. In tbe present case tbe court .is not satisfied that Bramliall did own tbe cotton, tbe proceeds of which be now claims.
In the case of Margaret Bond, (2 C. Cls. R., p. 629,) this court said, wo are to decide three things in this class of cases; first among which is that tbe claimant was tbe owner of tbe property seized and sold; failing in this essential feature, however strong tbe resemblance of other facts between this and any other case might be, the case would fail also. All things are not alike which have resemblances.
In tbe case of Margaret Bond, already referred to, it was held that tbe evidence required of tbe ownership of tbe property is at least equal to that necessary to sustain an action of *60 trespass or trover. The ownership must be a bona fide one, not collusive or colorable. The claimant seeking to recover the proceeds must show not only that he purchased the property, but he must satisfy us that he did so in the regular course of his business, and not in fraud of the act, or with a view of speculating upon the justice of the government. This requirement was met in the case of Mayer, but is absent from this record.
Why the number 72 should have been selected by Gowdy as the proper or magical number of bales, to be considered at all times as the equivalent of the money he owed claimant, it is not easy to understand. The amount due was certain, but bales differ in weight, and pounds differ in price, yet Gowdy would have us believe that for four years and upwards, through all the fluctuations of prices, he kept the number of 72 bales always ready, as an exact equivalent of the money due from him to claimant.
In his letter of December 27, 1864, placed by claimant in the record, which purports to have been written six days after the capture of Savannah, Gowdy informs the claimant that he .has 72 bales of cotton safely stored away for him, &c., &c., not bought with his money, but sufficient to cover money in my hands. Early in January Gowdy says he communicated with claimant and notified him that he had these 72 bales on hand for him, and enclosed him the marks and numbers. This latter communication, which should be in the possession of claimant, is notin the record, nór is its absence accounted for. If the transactions had been in good faith, it would seem that this letter might identify the bales and connect them, with some reasonable certainty, with the'bales now in controversy; it is strange that this letter is not produced.
We might dispose of this case without discussing its merits, upon the objections taken to the petition, by reason of its want of appropriate averments, but we prefer to dispose of the case upon its want of substance.
The proof does not convince us that the claimant was the owner of the cotton, or that he has a right to the proceeds, and we therefore dismiss his petition.